UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| CAPSTONE HEADWATERS LLC, * <br> * <br> Plaintiff, * <br> * <br> v. * <br> * <br> EDUTAINMENTLIVE LLC, * <br> * <br> Defendant. * <br> * <br> * | Civil Action No. 21-cv-10803-ADB |

**MEMORANDUM AND ORDER**
**DENYING DEFENDANT'S MOTION TO DISMISS**

BURROUGHS, D.J.

Plaintiff Capstone Headwaters LLC ("Plaintiff") brought this action against EdutainmentLive LLC d/b/a ITProTV ("Defendant"), alleging that Defendant has refused to pay Plaintiff for services it performed pursuant to an investment and financial services agreement between the parties. [ECF No. 19 ("Am. Compl.")]. Currently before the Court is Defendant's motion to dismiss the amended complaint for failure to state a claim. [ECF No. 21]. For the reasons set forth below, Defendant's motion to dismiss is DENIED.

I.     BACKGROUND

    A.     Factual Background

The following facts are taken primarily from the amended complaint, [Am. Compl.], the factual allegations of which are assumed to be true when considering a motion to dismiss, Ruivo v. Wells Fargo Bank, N.A., 766 F.3d 87, 90 (1st Cir. 2014). As it may on a motion to dismiss, the Court has also considered "documents incorporated by reference in [the complaint], matters of public record, and other matters susceptible to judicial notice." Giragosian v. Ryan, 547 F.3d

59, 65 (1st Cir. 2008) (alteration in original) (quoting In re Colonial Mortg. Bankers Corp., 324 F.3d 12, 20 (1st Cir. 2003)).

        1.        The Parties' Agreement

Plaintiff is an investment bank specializing "in middle market transactions." [ECF No. 21 at 1]. Defendant is a limited liability company that provides education and training in the information technology field. [Id.; Am. Compl. ¶ 9]. In May 2018, Defendant wanted to sell a minority equity stake in the company to a third-party investor, or to complete an alternative liquidity transaction. [Am. Compl. ¶ 14]. In pursuit of this goal, the parties entered into a transaction engagement agreement (the "Agreement") on approximately May 15, 2018, where Plaintiff agreed to perform various services to facilitate such a transaction between Defendant and a third-party investor. [Id. ¶¶ 2, 15–16; ECF No. 19-1 at 2 (copy of Agreement)]. Plaintiff's contracted-for services included identifying and evaluating potential investors, negotiating agreements with potential investors, and ultimately consummating agreements with potential investors. [ECF No. 19-1 at 2]. If Defendant completed a transaction with a third party, Plaintiff would be entitled to a professional fee (the "Transaction Fee").[1] [Id. at 3; Am. Compl. ¶¶ 18–19].

The Agreement's governance section explicitly stated that it could "not be amended or modified except in a writing signed by [Defendant] and [Plaintiff]." [ECF No. 19-1 at 5]. The Agreement also contemplated a twelve-month term that would end on May 15, 2019 (the "Term"). [Id. at 4, 6]. Even after the Agreement ended, Plaintiff would still be entitled to the Transaction Fee if certain events occurred during the twelve-month period following the

---

[1] Under the Agreement, the Transaction Fee was equal to "the [a]ggregate [t]ransaction [v]alue divided by 1,000,000,000 multiplied by the [a]ggregate [t]ransaction [v]alue." [ECF No. 19-1 at 3].

Agreement's termination (the "Tail Period"). [Id. at 4; Am. Compl. ¶ 21]. Specifically, Plaintiff would be owed a Transaction Fee if, "within 12 months following termination, [Defendant] closed a transaction with a prospective investor who (a) [Plaintiff] contacted with respect to a [t]ransaction, (b) was made aware of a [t]ransaction through [Plaintiff's] efforts, or (c) otherwise expressed interest about a [t]ransaction with [Defendant] to [Plaintiff]." [Am. Compl. ¶ 21; see ECF No. 19-1 at 4]. Further, Plaintiff could only recover the Transaction Fee for any Tail Period transaction if the prospective investor was considered a "Covered Party." [ECF No. 19-1 at 4]. For a prospective investor to be considered a Covered Party, the investor needed to be included on a "mutually agreeable list" that Plaintiff provided to "[Defendant] no later than the last day of the Term." [Id.].

        2.        Plaintiff's Performance of Services

After entering the Agreement, Plaintiff worked to secure an investor that would purchase a minority stake in Defendant. [Am. Compl. ¶¶ 22–23]. As of May 2019, when the Term was set to expire, Plaintiff had negotiated with several potential investors, but still had not closed a transaction. [Id. ¶¶ 24–26]. After the May 15, 2019, expiration date, Plaintiff continued providing services consistent with the Agreement. See [id. ¶¶ 27–31]. Between May and August 2019, Plaintiff contacted more than three hundred potential investors on Defendant's behalf and periodically provided Defendant with written status reports which "included the names of the potential investors and the actions [Plaintiff] had taken with respect to each." [Id. ¶ 27]. In September and October 2019, Plaintiff's representative travelled to Defendant's headquarters and participated in meetings with Defendant and five separate potential investors. [Id. ¶ 29]. As of November 2019, Plaintiff had secured letters of intent from three potential investors, but Defendant later rejected all of them. [Id. ¶ 30].

On December 4, 2019, Defendant emailed Plaintiff, stating that, "[p]er [their] conversation[,]" the email was to be "the official notification to cancel [their] agreement." [ECF No. 19-2 at 2 (copy of email); see Am. Compl. ¶ 31].[2] In April 2020, Plaintiff billed Defendant for expenses that were related to services it performed under the Agreement, including Plaintiff's travel expenses for the potential investor meetings in September and October 2019. [Am. Compl. ¶ 33]. Defendant paid this invoice in June 2020 without any objection. [Id.].

       3.       Defendant's Interactions and Transaction with Boathouse Capital

One of the three hundred potential investors that Plaintiff contacted between May and August 2019 was Boathouse Capital ("Boathouse"). [Am. Compl. ¶ 27]. Plaintiff told Defendant about Boathouse on "several occasions, including in the August 23, 2019 status report." [Id.]. Defendant did not object to Boathouse being listed as a potential investor on the status report. [Id.]. On August 26, 2019, representatives from Plaintiff, Defendant, and Boathouse all participated in a call to discuss a potential transaction, which Defendant ultimately declined. [Id. ¶ 28].

In February 2020, several months after Defendant had officially canceled the Agreement via email, Boathouse again contacted Defendant to explore a transaction. [Am. Compl. ¶ 32]. Defendant then reached out to Plaintiff to discuss this potential transaction. [Id.]. Plaintiff reminded Defendant of Boathouse's previous proposal in August 2019, and Defendant confirmed it had no interest in those terms. [Id.].

---

[2] As Defendant notes, this email did not explicitly reference the May 15, 2018 Agreement, but there is no evidence currently before the Court that suggests there was any other agreement between the parties. Accordingly, for the purposes of the motion to dismiss, the Court understands the email to refer to the Agreement.

On October 31, 2020, Boathouse announced that it had acquired Defendant. [Am. Compl. ¶ 34]. After Plaintiff discovered that Boathouse had completed a transaction with Defendant, Plaintiff demanded payment, asserting that the Transaction Fee was due under the Agreement. [Id. ¶¶ 35–36]. Defendant refused to pay. [Id. ¶ 36].

### B. Procedural Background

Plaintiff filed its two-count amended complaint on July 23, 2021, which alleges that Defendant's failure to pay the Transaction Fee after closing a transaction with Boathouse breached the Agreement (Count I), or, in the alternative, constituted unjust enrichment (Count II). [Am. Compl. ¶¶ 38–49]. Defendant filed a motion to dismiss the amended complaint on August 5, 2021, [ECF No. 21], which Plaintiff opposed on August 19, 2021, [ECF No. 22]. Defendant filed its reply in support of dismissal on August 27, 2021. [ECF No. 25].

## II. LEGAL STANDARD

In reviewing a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), the Court must accept as true all well-pleaded facts, analyze those facts in the light most favorable to the plaintiff, and draw all reasonable factual inferences in the plaintiff's favor. See Gilbert v. City of Chicopee, 915 F.3d 74, 76, 80 (1st Cir. 2019). "[D]etailed factual allegations" are not required, but the complaint must set forth "more than labels and conclusions." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007). The alleged facts must be sufficient to "state a claim to relief that is plausible on its face." Id. at 570.

"To cross the plausibility threshold a claim does not need to be probable, but it must give rise to more than a mere possibility of liability." Grajales v. P.R. Ports Auth., 682 F.3d 40, 44–45 (1st Cir. 2012) (citing Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009)). "A determination of plausibility is 'a context-specific task that requires the reviewing court to draw on its judicial

experience and common sense.'" Id. at 44 (quoting Iqbal, 556 U.S. at 679). "[T]he complaint should be read as a whole, not parsed piece by piece to determine whether each allegation, in isolation, is plausible." Hernandez-Cuevas v. Taylor, 723 F.3d 91, 103 (1st Cir. 2013) (quoting Ocasio-Hernández v. Fortuño-Burset, 640 F.3d 1, 14 (1st Cir. 2011)). "The plausibility standard invites a two-step pavane." A.G. ex rel. Maddox v. Elsevier, Inc., 732 F.3d 77, 80 (1st Cir. 2013) (citing Grajales, 682 F.3d at 45). First, the Court "must separate the complaint's factual allegations (which must be accepted as true) from its conclusory legal allegations (which need not be credited)." Id. (quoting Morales-Cruz v. Univ. of P.R., 676 F.3d 220, 224 (1st Cir. 2012)). Second, the Court "must determine whether the remaining factual content allows a 'reasonable inference that the defendant is liable for the misconduct alleged.'" Id. (quoting Morales-Cruz, 676 F.3d at 224).

### III. DISCUSSION

Defendant argues that the amended complaint should be dismissed because (1) the plain language of the Agreement bars Plaintiff from claiming that it is owed a Transaction Fee for the Boathouse transaction, [ECF No. 21 at 2, 5–8], and (2) under Massachusetts law, Plaintiff is prohibited from pleading unjust enrichment when its rights are governed by an express contract, [id. at 3, 9–10].

#### A. Count I: Breach of Contract

In Massachusetts, "[t]o prevail on a claim for breach of contract, a plaintiff must demonstrate that there was an agreement between the parties; the agreement was supported by consideration; the plaintiff was ready, willing, and able to perform his or her part of the contract; the defendant committed a breach of the contract; and the plaintiff suffered harm as a result." Bulwer v. Mount Auburn Hosp., 46 N.E.3d 24, 39 (Mass. 2016) (citing Singarella v. City of

Boston, 173 N.E.2d 290, 291 (Mass. 1961)).  Accordingly, Plaintiff cannot succeed if it is unable to prove that Defendant's alleged breach of contract was controlled by a "valid, binding contract."  Brooks v. AIG SunAmerica Life Assurance Co., 480 F.3d 579, 586 (1st Cir. 2007).

Defendant asserts that its transaction with Boathouse did not require it to pay the Transaction Fee because (1) the October 2020 transaction with Boathouse did not close until more than seventeen months after the Term expired in May 2019,[3] and (2) even if the Agreement was still in effect, Boathouse did not qualify as a "Covered Party" under the plain language of the Agreement.  [ECF No. 21 at 7–9].

### 1. The Agreement's Termination Date

As written, the Agreement states that the Term expired on May 15, 2019, and thus the twelve-month "Tail Period" would have expired on May 15, 2020, which is well before the October 31, 2020, transaction between Defendant and Boathouse.  See [ECF No. 19-1 at 4, 6]. Plaintiff does not dispute that this is what the Agreement says, but instead argues that the Agreement's Term was modified by subsequent communications and conduct, and that such modifications were supported by adequate consideration.  [ECF No. 22 at 6–7].  According to Plaintiff, because the Agreement did not actually expire until December 2019, when Defendant sent Plaintiff the email with the "official notification to cancel," the Tail Period ran until December 2020.  [Id. at 6–7].  Therefore, Defendant's transaction with Boathouse on October 31, 2020 triggered the requirement for a Tail Period payment under the Agreement.  [Id. at 8]. Defendant responds that any oral modification is not controlling because the Agreement states

---

[3] In Defendant's motion to dismiss, Defendant states that it "did not consummate a deal with Boathouse until October 31, 2020, *16* months after the expiration of the Term (May 15, 2019) . . . ."  [ECF No. 21 at 7 (emphasis added)].  The Court finds that the correct calculation between these dates is over seventeen months.

that it "may not be amended or modified except in a writing signed by [Defendant] and [Plaintiff]." [ECF No. 21 at 8 (quoting ECF No. 19-1 at 5)]. Defendant further argues that even if oral modification were permissible, there was no consideration to support the modification. [ECF No. 21 at 8–9; ECF No. 25 at 2].

Under Massachusetts law, "a provision that an agreement may not be amended orally but only by a written instrument does not necessarily bar oral modification of the contract." Cambridgeport Sav. Bank v. Boersner, 597 N.E.2d 1017, 1022 (Mass. 1992). "Indeed, it is well settled Massachusetts law that parties, through their words or conduct, may modify a contract despite a provision requiring modifications to be in writing." Bachorz v. Miller-Forslund, 703 F.3d 27, 33 (1st Cir. 2012) (citing Cambridgeport, 597 N.E.2d at 1022). Despite the "heavy [evidentiary] burden" required to show that the modification evinced mutual agreement, Beal Bank S.S.B. v. Krock, No. 97-2241, 1998 U.S. App. LEXIS 22051, at *9 (1st Cir. Sep. 3, 1998), at the motion to dismiss stage, Plaintiff "must merely allege sufficient plausible facts" to show a subsequent oral agreement, Fisher v. HSBC Bank, 332 F. Supp. 3d 435, 441 (D. Mass. 2018).

Taking Plaintiff's factual allegations as true and drawing all reasonable inferences in its favor, Plaintiff has alleged sufficient facts to plausibly infer that the Agreement's Term was modified by a subsequent oral agreement and corresponding course of conduct. Plaintiff asserts that "the parties continued performing under the Agreement after" the initial Term expired, with Plaintiff continuing its outreach to over three hundred potential investors, attending meetings with potential investors, and negotiating letters of intent with potential investors. [Am. Compl. ¶¶ 26–30]. Beyond Plaintiff's continued performance under the contract, Plaintiff alleges several specific facts that, if true, show that Defendant knew of and assented to Plaintiff's continued

performance under the Agreement beyond the initial Term of May 2019.  These facts include that:

- in September and October 2019, Plaintiff's representative travelled to Defendant's offices to participate in negotiations with Defendant and five separate potential investors, [Id. ¶ 29];
- in December 2019, "[p]er [the parties'] conversation," Plaintiff emailed Defendant with an "official notification to cancel [the] agreement," [ECF No. 19-2 at 2];
- in February 2020, Defendant contacted Plaintiff for advice regarding a potential transaction with Boathouse, [Am. Compl. ¶ 32];
- in June 2020, Defendant paid Plaintiff's invoice for expenses under the Agreement, including expenses for Plaintiff's travel to potential investor meetings in September and October of 2019, [id. ¶ 33].

These facts support the inference that Defendant knew that Plaintiff was continuing to perform services under the Agreement, and willingly accepted those services under the Agreement.  Other courts in this district have found similar conduct sufficient to subsequently modify written contracts.  See, e.g., Barletta Heavy Div., Inc. v. Erie Interstate Contractors, Inc., 778 F. Supp. 2d 109, 114 (D. Mass. 2011) (denying plaintiff's motion for summary judgment on breach of contract claim and finding that the "plaintiff's conduct (paying [defendant's] expenses) is some evidence of an oral agreement to modify"); Fisher, 332 F. Supp. 3d at 441 ("[Plaintiff] alleges that a [bank] representative told her to continue sending in modified payments.  Drawing all reasonable inferences in her favor [at the motion to dismiss stage], it is plausible that the parties agreed to modify her loan if she would not file for bankruptcy.").

Defendant's argument that the Agreement's written modification provision precludes any oral modification of the Agreement misapprehends the law.  Relying on Linton v. N.Y. Life Ins. & Annuity Corp., No. 04-cv-11362, 2006 U.S. Dist. LEXIS 77368, at *3 (D. Mass. Oct. 25, 2006), Defendant asserts that oral modification is barred here because the Linton court found that the "express terms of a contract must prevail over course of performance or course of dealing."

[ECF No. 21 at 8]. <u>Linton</u>, however, involved interpreting the meaning of a contract, which is not the issue here. In <u>Linton</u>, the court refused to ignore the contract's plain language when interpreting its meaning and found that "[r]ecourse to performance and usage of trade to <u>interpret</u> contract terms are necessary only when the contract terms are ambiguous." <u>Linton</u>, 2006 U.S. Dist. LEXIS 77368, at *3 (emphasis added). This sort of contract interpretation is distinguishable from the instant case, where the Court is being asked to find a <u>subsequent modification</u> based on either oral agreement or a course of conduct, despite language in the contract mandating only written modifications.

    In sum, Plaintiff alleges that it provided a range of services within the Agreement's scope after the original Term expired, and that Defendant knowingly accepted those services. This conduct is more than adequate, at this stage of the litigation, to plausibly show that the parties mutually agreed to extend the Term of the Agreement.

    The Defendant's alternative argument, that any modification of the Term would also be invalid for lack of consideration, also fails. [ECF No. 21 at 8–9]. Defendant correctly asserts that a mutual agreement and valid consideration are prerequisites to a binding contract. [<u>Id.</u> at 8]; <u>Cochran v. Quest Software, Inc.</u>, No. 00-cv-11856, 2002 U.S. Dist. LEXIS 16204, at *16 (D. Mass. Aug. 19, 2002) ("Under Massachusetts law, a party to a contract cannot unilaterally alter the terms of a contract, but rather must enter into a mutually agreed upon modification for which valid consideration is required.").[4] In the case of a modification, however, a party's continued

---

[4] Under a different line of Massachusetts cases, courts have found that "[m]odifications [to contracts] have long been recognized in law as valid, without additional consideration[.]" <u>Atlantis Servs. v. Asigra, Inc.</u>, No. 16-cv-10864, 2017 U.S. Dist. LEXIS 174723, at *10 (D. Mass. Oct. 23, 2017) (quoting <u>Beal Bank S.S.B.</u>, 1998 U.S. App. LEXIS 22051, at *22) (first two alterations added). These cases concluded that where there has been a subsequent oral modification, "[t]he contract, when modified by the subsequent oral agreement, is substituted for

performance can be adequate consideration.  See Cochran, 2002 U.S. Dist. LEXIS 16204, at *16 (citing Gishen v. Dura Corp., 362 Mass. 177, 183, 285 N.E.2d 117, 121 (Mass. 1972)) (noting, in the employment context, that "where the parties reach an agreement to modify the terms of [a] contract, . . . continued performance . . . can satisfy the consideration requirement").  Therefore, Plaintiff's allegations that it continued to provide services under the Agreement and that Defendant knowingly accepted those services are sufficient to support the inference that there was adequate consideration.

        2.        Boathouse as a Covered Party

Defendant next asserts that the breach of contract claim must be dismissed because, even if the Boathouse transaction occurred within the Tail Period, Boathouse was not a Covered Party under the plain language of the Agreement.  [ECF No. 21 at 7; ECF No. 25 at 3].  The Agreement limited a Covered Party to those parties that Plaintiff identified to Defendant in a "mutually agreeable list" before the last day of the Term.  [ECF No. 19-1 at 4; ECF No. 21 at 7].  Defendant contends that Plaintiff never included Boathouse in such a list.  [ECF No. 21 at 7; ECF No. 25 at 3].  Plaintiff responds that because it provided Defendant with "written status reports" identifying Boathouse as a prospective investor, and Defendant did not object to those status reports, Boathouse was sufficiently identified on a "mutually agreeable list" and was therefore a Covered Party.  [ECF No. 22 at 7–8].

The parties' dispute boils down to differing interpretations of the phrase "mutually agreeable list."  At the motion to dismiss stage, "the First Circuit has encouraged courts to allow

---

the contract as originally made, and the original consideration attaches to and supports the modified contract."  Beal Bank S.S.B., 1998 U.S. App. LEXIS 22051, at *22 (quoting Thomas v. Barnes, 31 N.E. 683, 684 (Mass. 1892)).  Because Plaintiff's modification would be adequately supported by consideration under either line of cases, the Court declines to further analyze the disparate conclusions in the case law.

breach of contract claims . . . if the contract could plausibly be read in the plaintiff's favor and the complaint's allegations suggest a breach." Sourcing Unlimited, Inc. v. Elektroteks, LLC, No. 20-cv-11955, 2021 U.S. Dist. LEXIS 127531, at *36-37 (D. Mass. July 8, 2021) (citing Young v. Wells Fargo Bank, N.A., 717 F.3d 224, 233 (1st Cir. 2013)).

Here, although it is a close call, the term "mutually agreeable list" can reasonably be construed to support Plaintiff's interpretation. "Mutually agreeable list" is not defined in the Agreement, and the Agreement failed to specify any material requirements for what would constitute a "mutually agreeable list." See [ECF No. 19-1 at 4]. Because the "natural meaning," Fashion House, Inc. v. K mart Corp., 892 F.2d 1076, 1084 (1st Cir. 1989), of this provision is "possibly ambiguous," O'Brien Inv. Partners, LLC, No. 08-cv-11678, 2009 U.S. Dist. LEXIS 73697, at *4–5 (alterations omitted), it is inappropriate to dismiss Plaintiff's claim at this stage.

Where Defendant's assertions that the Boathouse transaction was not covered by the Agreement are unavailing and Plaintiff has alleged facts sufficient to "state a claim to relief that is plausible on its face," Twombly, 550 U.S. at 570, Defendant's motion to dismiss Count One is DENIED.

### B. Count II: Unjust Enrichment

Defendant argues that Plaintiff's unjust enrichment claim must be dismissed because Plaintiff has an adequate remedy at law. [ECF No. 21 at 9–10]. Plaintiff responds that, at least at this stage of the litigation, it is proper to plead unjust enrichment in the alternative to a breach of contract claim. [ECF No. 22 at 9–10]. The Court agrees.

> Unjust enrichment is an equitable remedy, which exist[s] to supplement those available at law and not to contradict the judgments embodied in the statutes and the common law. Thus, a party with an adequate remedy at law cannot claim unjust enrichment. Specifically, [i]t is the availability of a remedy at law, not the viability of that remedy, that prohibits a claim for unjust enrichment.

Tomasella v. Nestlé USA, Inc., 962 F.3d 60, 82–83 (1st Cir. 2020) (alterations in original) (citations and internal quotation marks omitted).  While it is improper to claim unjust enrichment when there is an adequate remedy of law, "a district court may not dismiss a claim for unjust enrichment simply on the basis that a plaintiff also seeks a claim for breach of contract."  Green v. D2L Ltd., 516 F. Supp. 3d 43, 47 (D. Mass. 2021); see also Lass v. Bank of America, N.A., 695 F.3d 129, 140 (1st Cir. 2012) (stating that although "damages for breach of contract and unjust enrichment are mutually exclusive . . . it is accepted practice to pursue both theories at the pleading stage").

At this stage, it is still unclear whether Plaintiff has an adequate remedy at law with regard to its breach of contract claim.  It is undisputed that there was a contract governing the parties at some point, but Defendant itself argues that the Boathouse transaction was outside the Agreement's scope.  See supra Part III.A.  While the Court is rejecting Defendant's breach of contract arguments at this early stage of the litigation, it is not clear that Plaintiff will ultimately succeed in proving that the Boathouse transaction was covered by the Agreement.  See Green, 516 F. Supp. 3d at 47.  Given this uncertainty, Plaintiff is entitled to proceed with the unjust enrichment claim as an alternative theory of recovery.  Accordingly, Defendant's motion to dismiss Count II is DENIED.

## IV. CONCLUSION

For the reasons set forth above, Defendant's motion to dismiss Plaintiff's amended complaint, [ECF No. 21], is DENIED.

**SO ORDERED.**

December 13, 2021                                                                 /s/ Allison D. Burroughs
                                                                                              ALLISON D. BURROUGHS
                                                                                              U.S. DISTRICT JUDGE